UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MYCHELLE APPLEBERRY O/B/O R.A.,

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

6:18-CV-6237
DECISION AND ORDER

---

On March 21, 2018, the plaintiff, Mychelle Appleberry, on behalf of R.A., a minor child under 18 years of age, brought this action under the Social Security Act ("the Act"). She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that R.A. was not disabled. Docket Item 1. On October 23, 2018, the Commissioner moved for judgment on the pleadings, Docket Item 17; on February 5, 2019, Appleberry responded and cross-moved for judgment on the pleadings, Docket Item 20; and on February 26, 2019, the Commissioner replied, Docket Item 21.

For the reasons stated below, this Court denies the Commissioner's motion and grants in part Appleberry's cross-motion.

## BACKGROUND

### I. PROCEDURAL HISTORY

On March 9, 2015, Appleberry applied for Children's Supplemental Security Income benefits on behalf of R.A. Docket Item 12 at 82. Appleberry alleged that R.A. had been disabled since March 9, 2015, and was currently disabled. *Id.*

On June 30, 2015, Appleberry received notice that her application was denied because R.A. was not disabled under the Act. *Id.* at 91. She requested a hearing before an administrative law judge ("ALJ"), *id.* at 97, which was held on November 7, 2016, *id.* at 60. The ALJ then issued a decision on May 9, 2017, confirming the finding that R.A. was not disabled. *Id.* at 37-55. Appleberry appealed the ALJ's decision, but her appeal was denied, and the decision then became final. *Id.* at 8-13.

## II. CHILDREN'S DISABILITY STANDARD

A child under 18 is disabled under section 1614(a)(3)(C)(i) of the Act if he or she has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." In denying Appleberry's application, the ALJ evaluated her claim under the Social Security Administration's three-step evaluation process to determine whether an individual under the age of 18 is disabled. *See* 20 C.F.R. § 416.924(a).

At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity ("SGA"), defined as work activity that is both substantial and gainful. *Id.* § 416.972. "Substantial work activity" involves significant physical or mental activities. *Id.* § 416.972(a). "Gainful work activity" is work usually done for pay or profit, whether or not profit is realized. *Id.* § 416.972(b). If the claimant is engaged in SGA, the claimant is not disabled regardless of medical condition, age, education, or work experience. *Id.* at § 416.924(b). If the claimant is not engaged in SGA, the ALJ proceeds to the next step. *Id.*

At step two, the ALJ must determine whether the claimant has a medically determinable impairment, or combination of impairments, that is "severe." *Id.* at § 416.924(a). For a claimant under the age of 18, a medically determinable impairment or combination of impairments is not severe if it is a slight abnormality or a combination of such abnormalities that causes no more than minimal functional limitations. *Id.* § 416.924(c). If the claimant has a severe impairment, the ALJ proceeds to the third step. *Id.* § 416.924(a).

At step three, the ALJ must determine whether the impairment or combination of impairments meets, medically equals, or functionally equals an impairment in the listings. *Id.* § 416.924(d). If the claimant has an impairment or combination of impairments that meets, medically equals, or functionally equals the severity of one in the listings, and if such impairments have lasted or are expected to last for a continuous period of at least 12 months, then the claimant is disabled. *Id.* § 416.924(d). If not, then the claimant is not disabled. *Id.*

To determine whether impairments functionally equal one in the listings, the ALJ assesses the claimant's functioning in six separate "domains": (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. *Id.* § 416.926a(b)(1). That assessment compares how the child performs in each of these domains with the typical functioning of a child of the same age without impairment. *Id.* § 416.926a(b). A child's impairments are of listing-level severity if there are "marked" limitations in at least two domains or an "extreme" limitation in one domain. *Id.* § 416.926a(d). In determining whether limitations are

"marked" or "extreme," the ALJ will consider functional limitations that result from all impairments, including impairments that have been deemed not severe, and their cumulative effects. *Id.* §§ 416.923, 416.924a(b)(4), 416.926a(a), (c), and (e)(1)(i).

A "marked" limitation results when impairments "seriously interfere with [the child's] ability to independently initiate, sustain, or complete activities." *Id.* § 416.926a(e)(2)(i). A "marked" limitation is "more than moderate" but "less than extreme." *Id.* On a standardized test designed to measure abilities within a certain domain, a "marked limitation" means a score of at least two, but less than three, standard deviations below the mean and a level of day-to-day functioning consistent with that score. *Id.* § 416.926a(e)(2)(i), (iii). For example, in the domain of "health and well-being," a child is considered to have a "marked" limitation if he or she is frequently ill as a result of his or her impairments or exhibits frequent worsening of symptoms resulting in medically-documented exacerbations. *Id.* § 416.926a(e)(2)(iv). "Frequent" means episodes that occur on average every four months and last two weeks or more, or that occur more often than three times a year but last less than two weeks, or that occur less often but are of overall equivalent severity. *Id.*

An "extreme" limitation, on the other hand, results when impairments "interfere[ ] very seriously with [the child's] ability to independently initiate, sustain, or complete activities." *Id.* § 416.926a(e)(3)(i). An "extreme" limitation is one that is "more than marked." *Id.* The ALJ will determine a limitation to be "extreme" when a comprehensive standardized test designed to measure functioning in a particular domain results in a score of three or more standard deviations below the mean and day-to-day functioning consistent with that score. *Id.* § 416.926a(e)(3)(iii). In the domain of "health and well-

4

being," for example, the ALJ will consider a child to have an "extreme" limitation if the child is frequently ill or if impairments frequently become exacerbated, resulting in medically documented symptoms significantly more than those of a "marked" limitation. *Id.* § 416.926a(e)(3)(iv).

### III. OPINION EVIDENCE

The following summarizes the opinion evidence most relevant to Appleberry's claim. The ALJ considered the opinions of several sources, but two—Adam Brownfield, Ph.D., a psychologist, and Amy Schultheis, R.A.'s special education teacher—are of most significance to the claim of disability here.

#### A. Adam Brownfied, Ph.D., Psychologist

Dr. Brownfield conducted a consultative psychiatric evaluation of R.A. on June 23, 2015. Docket Item 12 at 332-35. Appleberry accompanied R.A. to the evaluation and provided R.A.'s medical and developmental history. *Id.* at 332.

Based on his evaluation, Dr. Brownfield found that R.A. had a normal appearance, appropriate affect, and "[g]ood and clear" speech. *Id.* at 333. He found R.A.'s thought process to be "[c]oherent and goal directed." *Id.* Dr. Brownfield further found that R.A. had impaired attention and concentration, impaired memory skills, and below-average intellectual functioning. *Id.* at 333-34.

Ultimately, however, Dr. Brownfield concluded that there was "[n]o evidence of a limitation in attending to, following, and understanding age-appropriate directions." *Id.* at 334. He further found no limitation in "completing age-appropriate tasks, adequately maintaining appropriate social behavior, asking questions and requesting assistance in an age-appropriate manner, being aware of danger and taking needed precautions, and

5

interacting adequately with peers and adults." *Id.* He found that R.A. was "moderately limited in responding appropriately to changes in the environment and learning in accordance to cognitive functioning." *Id.*

### B. Amy Schultheis, Special Education Teacher

Ms. Schultheis, R.A.'s sixth-grade special education teacher, completed a Social Security Administration "Teacher Questionnaire" regarding R.A.'s functioning in each of the six domains. *Id.* at 296-300. She opined that R.A. had "extreme" limitations in the domains of "acquiring and using information" and "attending and completing tasks." *Id.* at 297-98.

With respect to the domain of acquiring and using information, Ms. Schultheis noted that R.A. "receives special education support throughout the day" and "is significantly struggling in the classroom." *Id.* at 297. In particular, she explained that R.A. "struggles to recall learned information" and "has limited ability to apply learned information." *Id.*

In the domain of attending and completing tasks, Ms. Schultheis found that R.A. "is significantly limited in his ability to attend in the classroom." *Id.* at 298. She explained that "[h]is attention span is limited to 1-2 minutes, making learning difficult," and that he "needs frequent prompting" and "a lot of support to complete tasks." *Id.*

## IV. THE ALJ'S DECISION

The ALJ determined that R.A. was born on August 3, 2004, and therefore was school-aged when the application was filed on March 9, 2015. *Id.* at 43. At step one, the ALJ found that R.A. had not engaged in substantial gainful activity since the application date. *Id.* At step two, the ALJ found that R.A. suffered from several severe

6

impairments: "attention deficit hyperactivity disorder (ADHD), learning disorder, eczema/psoriasis, and speech delays." *Id.* Although the ALJ found these impairments to be severe, at step three he determined that they did not meet or equal any of the Childhood Listings in 20 C.F.R. § Part 404, Subpart P, Appendix 1. *Id.* at 44.

The ALJ specifically determined that R.A.'s mental impairments did not meet listings 112.02 (Organic Mental Disorders) and 112.11 (Attention Deficit Hyperactivity Disorder) because the record of evidence did not show an extreme limitation of one, or marked limitation of two, of the following areas of mental functioning: 1) understanding, remembering, or applying information; 2) interacting with others; 3) concentrating, persisting, or maintaining pace; or 4) adapting or managing oneself. *Id.*[1]

As is required by 20 C.F.R. § 416.924a(a) and SSR 09-2p, the ALJ considered all relevant evidence in the case record—including objective medical evidence, R.A.'s statements, and information from other sources such as R.A.'s teachers and family members—in reaching his determination. *Id.* The ALJ also explicitly considered the "whole child," as required by 20 C.F.R. § 416.924a(b) and (c) and explained in SSR 09-1p. *Id.* In doing so, the ALJ stated that he had evaluated R.A.'s abilities compared to other children his age without impairments, as well as the interactive and cumulative effects of all R.A.'s impairments, severe or otherwise. *Id.* at 44-45. Finally, the ALJ

---

[1] The ALJ also determined that R.A.'s condition did not meet listing 108.05 (Dermatitis) because "the medical record does not document evidence of extensive skin lesions that persist for at least three months despite continuing treatment as prescribed." Docket Item 12 at 44. On the contrary, the ALJ found, the record demonstrated that R.A.'s "symptoms are improved with medications and creams." *Id.* Appleberry did not contest this finding in her cross-motion.

7

stated that he had considered "the type, extent, and frequency of help the claimant needs to function." *Id.* at 45.

In addressing R.A.'s symptoms, the ALJ followed a two-step process to evaluate whether (1) there is an underlying medically determinable physical or mental impairment that could be expected to produce his symptoms, and (2) the intensity, persistence, and limiting effects of his symptoms interfere with his functioning. *Id.* As part of his analysis, the ALJ addressed R.A.'s abilities in each of the six domains for determining functional equivalence to the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 48-55.

The ALJ found a marked limitation in the domain of "acquiring and using information." *Id.* at 49. He found less-than-marked limitations in the domains of "attending and completing tasks," "interacting and relating with others," and "health and physical well-being." *Id.* at 50-51, 54. And he found no limitations in the domains of "moving about and manipulating objects" and "caring for yourself." *Id.* at 52-54.

In reaching his conclusion, the ALJ gave "some weight" to the opinion of Dr. Brownfield. *Id.* at 47. Specifically, the ALJ found that Dr. Brownfield's "opinion on the claimant's social functioning is consistent with the evidence that the claimant has displayed cooperative behavior, normal speech, normal mood, and normal affect." *Id.* The ALJ concluded, however, that "Dr. Brownfield's assessment of no limitation with following directions is not fully consistent with [Dr. Brownfield's] findings that the claimant has impaired attention, concentration, and memory, and below-average intellectual functioning." *Id.* Moreover, "[t]he claimant's education records suggest that

his ADHD and learning disorder imposes [sic] greater limitations than assessed by Dr. Brownfield." *Id.*

The ALJ acknowledged that Ms. Schultheis had opined that R.A. had "extreme" limitations in several domains. *Id.* He accorded her opinion "limited weight," however, because he found her conclusions to be "inconsistent with the overall evidence of record, which does not support extreme limitations." *Id.* motion.

## **STANDARD OF REVIEW**

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id.* This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles." *Johnson*, 817 F.2d at 986.

9

# DISCUSSION

## I. THE PLAINTIFF'S CLAIMS

Appleberry objects to the ALJ's findings of a marked—as opposed to extreme—limitation in the domain of acquiring and using information, and less-than-marked limitations in the domains of attending and completing tasks and interacting and relating to others. Docket Item 20-1 at 24-31. Appleberry's primary argument is that the ALJ erred in giving limited weight to Ms. Schultheis's opinion. *See id.* at 21-31.

## II. ANALYSIS

In evaluating a claim of disability, the Commissioner "will consider *all evidence* in [the claimant's] case record." 20 C.F.R. § 404.1520(a)(3) (emphasis added). Relevant evidence includes objective medical evidence such as laboratory findings; medical opinions and other medical evidence; nonmedical evidence such as the claimant's and third parties' testimony; and prior administrative findings. 20 C.F.R. § 404.1513. "[O]nly 'acceptable medical sources' can be considered treating sources . . . whose medical opinions may be entitled to controlling weight." *Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008) (quoting SSR 06-03P, 2006 WL 2329939 (Aug. 9, 2009)). "'Acceptable medical sources' are further defined (by regulation) as licensed physicians, psychologists, optometrists, podiatrists, and qualified speech-language pathologists." *Id.* (quoting 20 C.F.R. § 416.913(a)).

But the ALJ must at least consider the opinions of "other sources." In particular, "teachers are 'valuable sources of evidence for assessing impairment severity and functioning' based on their close interaction with students on a regular basis." *Archer ex rel. J.J.P. v. Astrue*, 910 F. Supp. 2d 411, 423 (N.D.N.Y. 2012) (quoting SSR 06–03P,

2006 WL 2329939, at *3 (Aug. 9, 2006)).  The ALJ is not obliged to assign weight or give deference to such sources.  *Genier*, 298 F. App'x at 108.  Nonetheless, the ALJ "should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning."  SSR 06-03P, at *6.  This is particularly true "when such opinions may have an effect on the outcome of the case."  *Id.*

When a claimant is in a structured educational setting, the ALJ must evaluate the effect of that setting on the claimant.  20 C.F.R. § 416.924a(b)(5)(iv)(C).  Because such a setting "may minimize signs and symptoms of [the claimant's] impairment(s)," the ALJ must "consider [the claimant's] need for a structured setting and the degree of limitation in functioning [he or she has] or would have outside the structured setting."  *Id.*  "Even if [the claimant is] able to function adequately in the structured or supportive setting, [the ALJ] must consider how [the claimant] function[s] in other settings and whether [the claimant] would continue to function at an adequate level without the structured or supportive setting."  *Id.*

Here, the record demonstrates that R.A. was in a self-contained special education classroom, which was classified as "Other Health Impaired" and had a student-teacher ratio of 15-1.  Docket Item 12 at 250, 266.  As part of his Individualized Education Plan ("IEP"), R.A. received a number of accommodations, including extra time to complete assignments; frequent checks for understanding; preferential seating; repeated and paraphrased directions; reteaching of materials; breaking tasks into smaller segments; and opportunities for movement breaks.  *Id.* at 273.  The ALJ

11

asserted that he had evaluated R.A. "as compared to other children the same age who do not have impairments" and had considered "the type, extent, and frequency of help [R.A.] needs to function." *Id.* at 44-45. But there is no indication of any such evaluation in the ALJ's analysis. Specifically, in evaluating the evidence that supposedly contradicted Ms. Schultheis's opinion about R.A.'s level of impairment, the ALJ made "no effort to determine whether [R.A.] can 'function independently, appropriately, and effectively in an age-appropriate manner outside of [a] highly structured setting.'" *Bonet ex rel. T.B. v. Colvin*, No. 1:13-CV-924, 2015 WL 729707, at *6 (N.D.N.Y. Feb. 18, 2015) (quoting *Marine ex rel. Paez v. Commissioner, SSA,* No. 94cv4577, 1996 WL 97172, at *8 (S.D.N.Y. Mar. 5, 1996)).

For example, with respect to the domain of acquiring and using information, the ALJ acknowledged that "Ms. Schultheis noted that [R.A.] was 'significantly struggling' in the classroom, and had difficulty recalling and applying learned information." *Id.* at 49. The ALJ found, however, that "an 'extreme' limitation is not supported by the record." *Id.* In support of this conclusion, the ALJ explained that "[t]reatment notes show improvements with a shift to a smaller classroom and adherence to a consistent medication schedule." *Id.*; *see, e.g.*, *id.* at 240 (noting that "[s]chool problem" was "much improved since in the appropriate smaller classroom"). Additionally, the ALJ observed that R.A. "was able to progress from the third grade to fourth grade after the 2013/2014 school year, fourth grade to fifth grade after the 2014/2015 school year, and fifth grade to sixth grade after the 2015/2016 school year." *Id.* at 49.

The fact that R.A. improved in a self-contained special education classroom with numerous accommodations sheds no light on how he would do absent those supports.

Similarly, R.A.'s promotions through sixth grade in his special education program does not necessarily demonstrate a lack of extreme impairments. The ALJ was obligated to do more: to compare R.A.'s performance to that of a child in a regular classroom. *See* 20 C.F.R. § 416.924a(b)(5)(iv)(C). But the ALJ did not do that.

Moreover, substantial evidence in the record supports Ms. Schultheis's opinion that the ALJ discounted. For example, R.A.'s IEP from fifth grade reported that he was reading at a *kindergarten* level and had "difficultly reading independently." *Id.* at 270. The IEP further noted that "[d]ue to difficulties with processing and memory skills, [R.A.] would benefit from frequent repetition and review of previously taught materials." *Id.* And a speech and language evaluation reported that R.A. "struggles with storing vocabulary and rapidly retrieving words to effectively participate in classroom and social conversations fluidly." *Id.* at 400.

Likewise, in the domain of attending and completing tasks, Ms. Schultheis again assessed R.A. as having extreme limitations, but the ALJ again discounted that assessment. *See* Docket Item 12 at 47. The ALJ found a less-than-marked impairment in this domain, largely because—after being prescribed ADHD medication—R.D. "displayed good attention to tasks and cooperative behavior during a speech and language evaluation." *Id.* at 50 (citing Docket Item 12 at 401). The ALJ also noted that R.A. "displayed normal attention for his age" during a pediatric examination. *Id.* at 47 (citing Docket Item 12 at 338).

A child's ability to maintain attention for brief periods of time during medical evaluations or one-on-one testing, however, does not equate to the ability to attend and complete tasks. Indeed, the regulations themselves note that a child "may function

13

differently in . . . one-to-one settings than . . . at school" and "may appear more or less impaired on a single examination (such as a consultative examination) than indicated by . . . a longer period." 20 C.F.R. § 416.924a(b)(6); *see also Carson v. Colvin*, No. 6:12-CV-6553 MAT, 2014 WL 1746056, at *7 (W.D.N.Y. May 1, 2014) ("The fact that Claimant was cooperative and friendly in a single, controlled, situation, where she was interacting one-on-one with an authority figure is of negligible weight when compared to the oppositional and anti-social behaviors displayed by Claimant at home and at school."). The ALJ did not factor that into the analysis.

Even worse, in the ALJ's evaluation of R.A.'s ability to attend and complete tasks, the ALJ did not even mention Ms. Schultheis's assessment or explain why R.A. has a less-than-marked limitation in an area in which his teacher—who sees him every day—believes he has an extreme limitation. *See* Docket Item 12 at 50. And like the analysis in the domain of acquiring and using information, the ALJ's analysis regarding R.A.'s ability to attend and complete tasks did not address how R.A. would function outside his structured special education classroom. *Id.* Nor did the ALJ address evidence in the record that supports Ms. Schultheis's opinion. For example, the same speech and language evaluation reported that R.A. "needs frequent redirection to task and he may disengage from therapy activities." *Id.* at 401; *see also id.* at 267 (noting that February 2015 report card stated that "[h]yperactivity and distractibility are negatively impacting [R.A.'s] performance").

The ALJ's failure to evaluate R.A.'s ability to function outside his structured special education classroom was legal error. *See Bonet*, 2015 WL 729707, at *8 (finding legal error where "the ALJ failed to consider the effects of [the claimant's] highly

structured school environment on his ability to attend and complete tasks, and made no effort to compare that environment to a non-structured one"); *Marine*, 1996 WL 97172, at *8 (explaining that "the ALJ must consider the effect that a structured or highly supportive setting . . . may have on children").

Accordingly, the Court remands this case so that the ALJ can properly evaluate the effect that a structured setting had on R.A. The ALJ should also reconsider and explicitly address whether to credit Ms. Schultheis's opinion—especially with respect to the domains of acquiring and using information and attending and completing tasks. "Given the need to apply the proper legal standard, the Court will decline at this time to consider whether substantial evidence exists to support the findings the ALJ made." *Bonet*, 2015 WL 729707, at *7.

## **CONCLUSION**

For the reasons stated above, the Commissioner's motion for judgment on the pleadings, Docket Item 17, is DENIED, and Appleberry's motion for judgment on the pleadings, Docket Item 20, is GRANTED in part and DENIED in part. The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated: October 7, 2019
Buffalo, New York

*s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE